**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **JEFFREY D. LESTER** | ) | **CASE NO.  09-70048** |
| **SANDRA K. LESTER** | ) | |
| | ) | |
| Debtors. | ) | **CHAPTER 13** |

_____

## <u>MEMORANDUM DECISION</u>

The matter before the Court is the Debtors' Motion for Conversion of Chapter 13 Case to One under Chapter 11 ("Motion to Convert"), filed April 6, 2009, and the objection thereto, filed on April 20, 2009 by Grundy National Bank ("Grundy").  Closely related to the Debtors' Motion to Convert is Adversary Proceeding Number 09-07001, filed by the Debtors against Grundy, seeking the avoidance of an allegedly fraudulent transfer induced by the bank and the recovery of money and property transferred in accordance therewith.  An evidentiary hearing was held upon the Debtors' Motion to Convert on April 22, 2009, during which the female Debtor, Sandra K. Lester, testified and the Court admitted as evidence three exhibits offered by Grundy.  At the conclusion of said hearing, the Court took the matter under advisement.  After consideration of the facts and arguments submitted by both parties and based on the following, the Court grants the Debtors' Motion to Convert.

FINDINGS OF FACT

The Debtors filed a voluntary petition in bankruptcy under chapter 13 on January 9, 2009.  They filed their supporting schedules and a Chapter 13  Plan on January 21, 2009. Confirmation of such Plan was initially scheduled for March 17, 2009.  However, counsel for the Debtors appeared at that hearing and sought its continuance to June 30, 2009, and an Order

granting that request was entered March 30, 2009. The Plan proposes to pay thirty six payments of $613.72 each towards an objective of paying 100% of the Debtors' undisputed unsecured debts, and the Debtors propose to continue making their regular contractual payments to Trupoint Bank, which holds a first lien on the Debtors' residence, a double wide home and land located at 1068 Destiny Road in Big Rock, Virginia. The Plan makes no provision for payments on the note payable to Grundy and secured by the deed of trust and the only specific mention of Grundy's claims in the Plan appears in paragraph 7B, which lists secured claims which the Debtors seek to avoid. Per the Debtors' accompanying schedules, Grundy holds a second lien on the Debtors' residence securing a claim valued by the Debtors at $78,629.87, which the Debtors claim to be an allegedly fraudulent transfer.[1] In accompanying Schedule F, the Debtors also list $20,272 in eight unsecured non-priority claims held by Grundy, seven of which aggregating $17,672 are disputed as allegedly fraudulent loans. No objection to confirmation had been filed prior to the originally-scheduled confirmation hearing, and, according to the proffer by counsel for Grundy during the April 22 hearing, the Bank is willing accept deferred payment of the installment payments due on the secured note during the term of the chapter 13 plan until after such plan has been completed, expressly noting that it had not objected to such plan.[2]

---

[1] The Court discusses the Debtors' allegations that the claims by Grundy relate to fraudulent transfers only insofar as it is necessary to decide whether to grant or deny the Motion to Convert, which is the only matter before the Court at this time. The Court does not make any findings of fact or render any conclusions of law relating to the Debtors' adversary proceeding seeking to avoid the allegedly fraudulent transfers.

[2] While counsel for Grundy contended at the hearing upon the Debtors' Motion to Convert that Grundy had accepted the provisions of the Debtors' Chapter 13 Plan, it would be more accurate to state that Grundy accepts those provisions of the Plan by which the Debtors' debts other than Grundy's secured claim would be paid over a Plan term of thirty-six months. Grundy certainly is sparing no effort to defeat the provision of the Plan seeking by means of an

To accomplish avoidance of the allegedly fraudulent transfers, the Debtors initiated Adversary Proceeding Number 09-07001 on January 11, 2009 by filing a complaint seeking the avoidance of the transfer of a Deed of Trust and Note in favor of Grundy and the recovery of any sums paid thereunder.  Grundy responded to said complaint by filing a Motion to Dismiss on February 24, 2009 under Federal Rule of Bankruptcy Procedure 12(b) and Federal Rule of Civil Procedure 12(b), alleging a lack of subject matter jurisdiction, a lack of standing by the Debtors to pursue the action, and a failure to state a cause of action by the Debtors.  A hearing was held on the Motion to Dismiss on March 4, 2009, during which the Court set forth a schedule for briefing on the issue of standing raised by the Motion to Dismiss.  On March 23, 2009, Grundy filed its brief in support of its Motion.  On April 6, 2009, the Debtors filed the Motion to Convert presently before the Court.  On that same day, the Debtors also filed a Motion to Continue Briefing Schedule in the adversary proceeding, to which Grundy filed an objection on April 14, 2009.  A hearing was held by telephone on the Debtors' Motion to Continue and Grundy's objection thereto on April 14, 2009, during which counsel for the Debtors argued that a continuance of the briefing schedule relating the Motion to Dismiss, particularly as it related to a Chapter 13 debtor's lack of standing to file a complaint seeking to exercise the powers of a bankruptcy trustee to avoid transfers, was appropriate as the Debtors had filed a Motion to Convert to Chapter 11, the granting of which, according to counsel for the Debtors, would render Grundy's lack of standing objection moot.  Counsel for Grundy agreed to continue the briefing schedule but nevertheless noted on the record Grundy's position that the issue regarding lack of

---

adversary proceeding to avoid the Deed of Trust in favor of Grundy and the Note it secures.

3

standing would not be rendered moot.[3]  Based on the arguments advanced during the telephonic

hearing and at the hearing upon the Motion to Convert, by Order entered April 23, 2009 the

Court granted the Debtors' Motion to Continue the Briefing Schedule in the adversary

proceeding indefinitely, noting that such schedule would be established once the Court makes a

ruling on the Motion to Convert.

According to the factual allegations in the Debtors' complaint and the unopposed

testimony of Mrs. Lester during the hearing on the Motion to Convert, Grundy's claims which

are the subject of the Debtors' avoidance action arise from a Deed of Trust and Note signed by

the Debtors in favor of Grundy in connection with an agreement which they made to make

financial restitution to the Bank on behalf of their son, who made falsified loans while working

for Grundy.  Under such Agreement, dated January 12, 2008, the Debtors essentially borrowed

$80,026.16 in funds from Grundy to make restitution on behalf of their son, and to secure the

repayment of such funds, the Debtors agreed to execute a Deed of Trust and Note.[4]  The Deed of

Trust signed by the Debtors pledged the Debtors' home as collateral to secure the repayment of

the Note.  The Debtors assert in their Complaint that they entered into this transaction as a result

of  statements by Bobby Reese, the President and Chief Executive Officer of Grundy, that their

restitution for their son's misdeeds "would go a long way toward helping [the Debtors' son] not

go away."  According to the testimony of Mrs. Lester elicited during the hearing on the Motion

to Convert, Mr. Reese also represented to the Lesters that Grundy would not actively recommend

_____

[3] The Court does not reach any conclusions of law at this time relating to the parties'
arguments on this interesting legal issue.

[4] Copies of all three documents are attached as exhibits to the adversary proceeding
complaint.

a term of imprisonment during the sentencing of the Debtors' son.[5]   This testimony was

unchallenged by counsel for Grundy.  In fact, on cross-examination, counsel for Grundy asked

Mrs. Lester whether Grundy had fulfilled its obligations under the bargain by refraining from

pursuing a sentence of imprisonment, to which Mrs. Lester answered in the affirmative.   As it

turned out, the Debtors' son was sentenced by the United States District Court for the Western

District of Virginia on December 16, 2008 to a 12-month term of imprisonment, but the Court

deferred making a determination of restitution.  In ¶ 8 of its Objection to the Debtors' Motion to

Convert, Grundy noted that, "as the debtors intended, the restitution agreement put the son in a

favorable light before the District Court which could have sentenced him to [a] much longer

sentence [of] 30 years in prison[.]"  By this time, and as noted by Grundy in its Objection and

reasserted by counsel for Grundy at the hearing on the Motion to Convert, the Debtors had

already filed their bankruptcy and filed the complaint in the adversary proceeding seeking

avoidance of the entire transaction.  The District Court then entered an Amended Judgment

Order on February 10, 2009 in which it ordered the Debtors' son to pay restitution to Grundy in

the total amount of $113,419.09.

   According to Mrs. Lester's testimony, it is the additional obligations imposed

upon the Debtors as a result of the Deed of Trust and Note securing Grundy's $78,629.87 claim

---

[5]  More specific allegations of various alleged material misrepresentations by Mr. Reese
are contained in the complaint, and the Court, in discussing the facts underlying the closely-
related adversary proceeding, does not make any findings of fact which relate to those specific
allegations of the Debtors.  The findings of fact noted above restate only the unchallenged
testimony elicited during the hearing on the Motion to Convert.  Moreover, this Court notes Mr.
Copeland's objection to the admission of evidence and solicitation of testimony relating to the
Debtors' son's criminal case on the grounds of relevance.  However, to the extent it is necessary
to discuss these facts as background relating to the Motion to Convert, this Court, as noted
during the hearing, overrules such objection.

which caused the Debtors to file bankruptcy, as they could not afford to make the additional

monthly payments.  Accordingly, the Debtors filed their bankruptcy petition in an effort to save

their residence, on which Grundy now holds a second lien by way of the Deed of Trust and Note

discussed above.

The Court finds that the Debtors filed their chapter 13 case and the present

Motion to Convert for the same reason, in Mrs. Lester's words, to try to save their home.

Implicit in this purpose is to accomplish that by undoing the transaction with Grundy which

involved them undertaking (i) to borrow from Grundy the funds necessary to make restitution for

most or all of their son's debt to such bank arising from his fraudulent activities while he was

employed there as a loan officer, and (ii) granting a deed of trust upon the equity in their

residence to secure the repayment of such loan.  The Court further finds that the Lesters filed

their bankruptcy case subsequent to their son's sentencing hearing in the United States District

Court for this district upon the criminal charges which ensued as a result of their son's actions

and which resulted in a sentence of eighteen months to serve.  That sentence also resulted in an

obligation of restitution to Grundy for its losses which was not resolved until after the filing of

the present bankruptcy case and adversary proceeding.  The Court further finds that completion

of their proposed Chapter 13 Plan without a successful outcome of their complaint against

Grundy would leave them clear of their other pre-petition debt but then facing the continued

existence of the Grundy Note and Deed of Trust, which by that time would more likely than not

be several years delinquent in payments.

A review of the schedules filed in the bankruptcy case reveals that the Debtors

have a combined gross income per month of $5,563.33, and a combined net monthly income of

$3,287.97.  Among the deductions from that gross income are a "401 K" payment by Mr. Lester

in the amount of $509.17 per month, a "401 K" payment by Mrs. Lester in the amount of

$173.33 per month, and a "401 K Loan" payment by Mr. Lester in the amount of $402.59 per

month.  No information is provided as to the date of such "401 K" loan, its original amount, its

purpose, its current balance or its term.  Schedule B represents that Mr. and Mrs. Lester have

"401 K" benefit plans in the amount of $280,465.59[6] and $12,694.68, respectively, which are

asserted not to be included in the bankruptcy estate.  Schedule D represents that their home is

subject to a first lien deed of trust in favor of TruPoint Bank having a petition date unpaid

balance of $4,986.16.[7]  In Schedule J the Debtors represent that they have a $370.84 monthly

obligation upon their mortgage.  At the hearing on the Motion to Convert, Mrs. Lester testified

that their son had made the monthly payments due on the Grundy restitution loan until the time

of the sentencing hearing and that she and her husband had not made any payments on it.  In

Schedule J the Debtors note monthly expenses totaling $2,674.25 and list a monthly net income,

after the deduction of expenses, of $613.72, which is the amount of the monthly payments the

Debtors proposed to pay under their Chapter 13 Plan.

### CONTENTIONS OF THE PARTIES

In the Motion to Convert, the Debtors acknowledge that the issue of whether the

---

[6] The Schedules do not disclose whether this amount includes the petition date balance of the "401 K" Loan or is net of such amount.

[7] TruPoint Bank has filed a proof of claim in this case asserting a secured debt against the Debtors' residential property with a petition date balance of $4,629.31.  Attached to the proof of claim is a copy of the note which TruPoint claims to be secured.  This note is dated February 5, 2002 in the original sum of $27,200 and is payable with interest at the rate of 7% per annum in ninety-six monthly installments of $370.84, the last of which is due February 5, 2010.

Debtors under chapter 13 had the authority to avoid fraudulent transfers is related closely to the

Motion.  The Debtors state that the Motion is filed "[i]n order to avoid any possibility that the

fraudulent transfer obtained by Grundy National Bank cannot be avoided."  *See* Motion for

Conversion of Chapter 13 Case to One under Chapter 11, ¶ 2.  Moreover, the Debtors assert that

it "would be in the best interests of their creditors if their case would be converted to one under

chapter 11."  *Id*.

  In its objection thereto, Grundy argues that the Motion to Convert was not filed in

good faith as the Motion "was filed as a litigation tactic to affect the outcome of the Complaint."

*See* Objection to Motion for Conversion of Chapter 13 Case to One under Chapter 11, ¶¶ 17-18.

Grundy also argues that the Debtors are abusing the bankruptcy system by seeking conversion as

no legitimate bankruptcy purpose would be served.  Moreover, because the proposed Chapter 13

Plan accounted for all of the Debtors' disposable income and because the additional conversion

fee, quarterly fees and attorney's fees that would stem from conversion would reduce the

distribution in chapter 11 to the unsecured creditors whose claims would be paid in full under the

Chapter 13 Plan, Grundy argues that conversion would not be in the best interests of the

creditors.

  At the hearing, the Debtors asserted that the Motion to Convert was filed in

response to the choice facing the Debtors as a result of the controversy over whether or not they

could pursue the avoidance action under chapter 13.  Because the Deed of Trust and Note in

favor of Grundy stripped all equity from the Debtors' residence, they had a choice between

converting to chapter 7 or converting to chapter 11, as only those two choices would ensure that

the legal effectiveness of Grundy's lien would be  resolved prior to the entry of the Discharge

8

Order and subsequent closing of the Debtors' bankruptcy case. Therefore, the Debtors assert that their Motion was not filed in bad faith. The Debtors also assert that the case law on the issue uniformly holds that the Court has discretion in deciding whether to grant or deny such motions to convert. The Debtors cited to the factors adopted by the United States District Court for the Southern District of Indiana in the case of *Anderson v. United States ex rel Small Business Administration*, 165 B.R. 445 (S.D. Ind. 1994) and argued that those factors favored conversion in the present case.

In response, Grundy reasserted its position that the Motion to Convert was filed for the benefit of the Debtors and not for the benefit of the creditors. Grundy observed that it had not and would not object to the Debtors' Chapter 13 plan and, as it was the only creditor effectively prejudiced by the plan, it was in the best interests of the creditors to deny the Motion to Convert. Grundy also asserts that the Court's discretion in ruling upon such motions must be determined based on what is in the best interests of the creditors.

CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. The determination of whether to grant or deny a motion for conversion is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

Conversion from Chapter 13 to Chapter 11 is controlled by Section 1307 of the Bankruptcy Code. That section provides that "[A]t any time before the confirmation of a plan under section 1325 of this title, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter

9

11 or 12 of this title." 11 U.S.C. § 1307(d).  Counsel for both parties have accurately noted that

the case law regarding this particular provision is sparse.  Between them the parties cite only two

cases discussing on what principles contested motions to convert from chapter 13 to chapter 11

ought to be decided, *Anderson v. United States ex rel Small Business Administration*, *supra*, and

*In re Plagakis*, 2004 U.S. Dist. LEXIS 2458 (E.D.N.Y. Jan. 27, 2004).[8]   In fact, in its discussion

of this section of the Bankruptcy Code, *Anderson* is the only on-point case cited by *Collier*.  *See,*

*e.g.,* 8 *Collier on Bankruptcy* ¶ 1307.05 (Alan N. Resnick & Henry J. Sommer eds., 15th ed.

rev.).  *Collier* does note, however, that the Court has discretion whether to grant or deny a

motion to convert to chapter 11.  *Id.*  Other commentators have noted that conversion is not an

absolute right, even if requested by the debtor, under § 1307(d); observing that conversion from

chapter 13 to chapter 11 is, instead, discretionary with the Court.  *See* 4 *Chapter 13 Bankruptcy* §

321-2 (Keith M. Lundin, 3d ed.); *see also* 5 *Norton Bankruptcy Law and Practice* § 125:2

(William L. Norton, Jr., 2d ed.).  While the principle that decisions on such motions to convert

are discretionary with the bankruptcy court seems well-established, what is not clear, however,

in view of the lack of any specific guidance from Section 1307(d), is what standards exist to

guide or limit the court's exercise of its discretion in deciding such motions.  *See Anderson*, 165

B.R. at 448.

The court in *Anderson* seemed to find persuasive a list of factors which might

limit a court's discretion in deciding motions to convert under § 1307(d).  *Id.* at 448-49.  Such

factors include the "willful failure of the debtor to abide by orders of the court," "unreasonable

---

[8] Counsel for the Debtors cited both cases during his oral arguments at the hearing on the
Motion.  He primarily cited *Anderson*, but also mentioned the decision in *Plagakis*, in which the
court analyzed a Motion under § 1307(d) using the factors adopted by the court in *Anderson*.

10

delay by the debtor that is prejudicial to the creditors," "inability to effectuate a plan," "failure to timely file a plan," "bad faith," and, in the case of debtors whose debts are primarily consumer debts, whether the granting of relief would be a "substantial abuse." *Id*. (citing *In re Funk*, 146 B.R. 118 (D.N.J. 1992)). In deriving these factors, which were then adopted by the court in *Anderson*, the court in *Funk* suggested that courts look to other sections of the Bankruptcy Code dealing with conversion among the various chapters in bankruptcy. *Anderson*, 165 B.R. at 448-49; *Funk*, 146 B.R. at 122. While this Court does not understand the lack of specific guidance within Section 1307(d) to mean that the discretion of the Court in considering motions to convert brought under its authority is limitless, this Court is also not persuaded that it should read into Section 1307(d) those factors contained in other sections of the Code which govern motions to convert from or to cases under different Chapters.

In drafting the various sections of the Bankruptcy Code, Congress has on other occasions specifically limited the courts' discretion when deciding whether to grant or deny motions to convert or dismiss under the specific statutory sections.  Under § 1307(c), for example, a court, upon request of a party in interest to convert a chapter 13 case to one under chapter 7, "may convert a case . . . to [one] under chapter 7 . . . , or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause[.]" 11 U.S.C. § 1307(c).  That section further provides an eleven-item list of specific examples which would constitute the requisite cause to dismiss or convert a case to one under chapter 7.  Similar language is used in Section 707(a):  "The court may dismiss a case under [chapter 7] only after notice and a hearing and only for cause." 11 U.S.C. § 707(a).  Again, that section defines what constitutes cause sufficient to grant a motion to dismiss under its authority.  Section 1112(b)

11

provides

> [O]n request of a party in interest, and after notice and a hearing,
> absent unusual circumstances specifically identified by the court that
> establish that the requested conversion or dismissal is not in the best
> interests of creditors and the estate, the court shall convert a case
> under this chapter to a case under chapter 7 or dismiss a case under
> this chapter, whichever is in the best interests of the creditors and the
> estate, if the movant establishes cause.

11 U.S.C. § 1112(b).  After comparing these various sections of the Bankruptcy Code, it

becomes clear that Congress provided for differing standards for bankruptcy courts to use in

deciding motions to dismiss and/or convert under these various sections, sometimes providing

that the courts should decide such issues based on what they found to be in the best interests of

the creditors, but sometimes not.  This Court, therefore,  is not persuaded that Congress intended

it to read into Section 1307(d) by implication some specific limitation on the discretion granted

thereunder similar to those limitations *expressly* contained in the other sections of the Code

dealing with conversion and dismissal.

However, Grundy makes this very argument in opposing the Debtors' Motion to

Convert.  Grundy argues that conversion in this case is not in the best interest of creditors and

that this Court's discretion is limited to applying that specific test.  This Court, however, based

on the comparisons noted above, does not find this argument persuasive.  For one thing, the

argument implicitly assumes that Grundy and the other creditors or the chapter 13 Trustee could

expect or even be assured that the Debtors would complete a chapter 13 plan even if their

adversary proceeding against Grundy were defeated, although such is very far from the case.

Furthermore, without specific guidance from Congress on what factors to consider when

rendering a decision on a motion to convert under this section, this Court concludes that its

12

discretion is broad, and limited primarily by the overarching spirit and purpose of the

Bankruptcy Code.  Thus, the Court concludes that § 1307(d) contemplates some balancing

between the competing interests of creditors *and* debtors.

Such a conclusion is supported by a comparison of § 1307(d) and § 706(b).

Section 706(b) provides that "[o]n request of a party in interest and after notice and a hearing,

the court may convert a case under this chapter to a case under chapter 11 of this title at any

time."  11 U.S.C. § 706(b).  Except for the additional temporal limitation under § 1307(d)

limiting its application to motions filed prior to the confirmation of a Chapter 13 Plan, the

language of the two sections is identical.  Under § 707(b), decisions "to convert [are] left in the

sound discretion of the court and should be based on what will most inure to the benefit of all

parties in interest."  6 *Collier on Bankruptcy* ¶ 706.03 (Alan N. Resnick & Henry J. Sommer

eds., 15th ed. rev.); *In re Watkins*, 132 B.R. 781 (Bankr. S.D. Fla. 1991).  This Court concludes

that a similar analysis is appropriate under § 1307(d).

Unfortunately, the dispute between the Debtors and Grundy regarding the validity

of the restitutionary transaction is a zero-sum game in that such transaction will either stand

completely or be swept aside entirely.  11 U.S.C. § 548(a)(1).  *See In re Coleman*, 426 F.3d 719,

726-27 (4th Cir. 2005).  Accordingly, what is in the Debtors' interests and they assert in the

interests of their other creditors is adverse to Grundy's interests and vice-versa.  Grundy argues

that it is readily apparent that the Debtors' Motion to Convert is merely a litigation tactic to

avoid an adverse court ruling upon Grundy's Motion to Dismiss the Complaint on the ground of

the Debtors' lack of standing as chapter 13 debtors to exercise the avoidance powers of a

bankruptcy trustee for their own personal benefit.  While there may well be a substantial basis

13

for that argument, the Court doesn't believe that such intent, if that be the case, is determinative of the Motion to Convert under the facts presented in this case, where the Debtors do have other creditors whose rights would be adversely affected if the Debtors' Chapter 13 Plan were not to be successfully completed, whatever the reason for such non-completion might be.  While Grundy's outrage at the idea of the Debtors agreeing to provide restitution for their son's wrongdoing in advance of the hearing of the criminal charges against him and then attempting to renege on the obligation once the District Court had imposed a sentence upon him is palpable and to some degree understandable, the Court's perspective must be broader.  Chapter 13 has been designed by Congress to be voluntary on the part of debtors, who may not be compelled to remain in it over their objection.  Although § 1307(d) does not provide to debtors any absolute right to convert to chapter 11, it does provide them the prerogative, at least where their cases have not been converted previously, to dismiss their case.  There would be nothing to prevent the Debtors from dismissing their current case and then filing a new petition under chapter 11 in which they might seek to exercise the powers of a trustee in the capacity of debtors-in-possession.  While it is true that automatic stay issues would likely arise in such a second filing by virtue of the provisions of 11 U.S.C. § 362(c), it is unlikely that the Debtors in a new case would be precluded from obtaining a ruling upon the merits of an adversary proceeding asserting the same claims which are before the Court in the pending proceeding. Similarly, the Debtors have an unqualified right to convert their chapter 13 case to a liquidation case under chapter 7 in which the challenges they assert against the Grundy transaction could be taken up by a chapter 7 trustee.  If that were to occur and the chapter 7 trustee were to be successful against Grundy, the likely end result would be quite similar to the conclusion which the Debtors seek to achieve.

14

That is to say that Grundy would be left without the benefit of its restitutionary transaction and the Debtors would be obliged to settle with the chapter 7 trustee for the amount needed to pay their other undisputed creditors and the trustee's expenses and compensation, with any excess coming back to them, or face the prospect of such trustee selling their home so that the creditors might be paid thereby.

The Debtors clearly satisfy the only specific limitation expressed in the statute upon their Motion to Convert to chapter 11, which is that such a motion must be filed prior to confirmation of a chapter 13 plan. There is no evidence before the Court suggesting that the Debtors have failed to comply with any order of this Court or to perform their obligations under chapter 13. Their failure to pay an April payment to the chapter 13 trustee is readily explained by the advice given them by their counsel that such payment would not be necessary in light of the decision to file the Motion to Convert to chapter 11, which, if granted, would result in any sums previously paid by them to the chapter 13 trustee under the terms of the plan being refunded to them following case conversion.

In light of these facts the Court concludes that even if it be acknowledged, which effectively it is, that the Debtors' motivation in attempting to convert their case to chapter 11 is to obtain the status of debtors-in-possession entitled to exercise the powers of an independent trustee in bankruptcy, such fact standing alone, unaccompanied by any wrongful conduct on their part either immediately preceding or during this case, is not sufficient cause to deny their Motion to Convert. Therefore, an order converting this case to chapter 11 will be entered contemporaneously with the docketing of this decision. The Court believes that the issues raised by Grundy are worthy of serious and careful consideration, but that they should be decided in the

15

context of the determination of this adversary proceeding and any plan of reorganization which

the Debtors may propose under the provisions of chapter 11 of the Bankruptcy Code.

This 4th day of May, 2009.

William F. Stone, Jr.

_____

UNITED STATES BANKRUPTCY JUDGE

16